SHORT RECORD
Appeal No. 13-3353
Filed 10/23/13

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

In re Official Committee of Unsecured Creditors,
Petitioner

Petition for a Writ of Mandamus to the United States District Court
For the Eastern District of Wisconsin
Case No. 13-CV-179
The Honorable Rudolph T. Randa

## PETITION FOR A WRIT OF MANDAMUS DIRECTING THE HONORABLE RUDOLPH T. RANDA TO RECUSE HIMSELF PURSUANT TO 28 U.S.C. § 455

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone:  (215) 353-8984
E-mail:      Hamilton.marci@gmail.com
Co-counsel to Petitioner Official Committee of
Unsecured Creditors

# TABLE OF CONTENTS

RELIEF REQUESTED.................................................................................................. 1
JURISDICTION ......................................................................................................... 1
ISSUES PRESENTED.................................................................................................. 2
BRIEF ANSWER ...................................................................................................... 2
SUMMARY OF ARGUMENT ..................................................................................... 2
FACTS ...................................................................................................................... 5
    A.     The Debtor transferred over $55 million to the Cemetery Trust. ......... 5
    B.     The Debtor filed for bankruptcy. .................................................... 6
    C.     The Archbishop, as trustee of the Cemetery Trust, sued the Committee. ............ 6
    D.     The Debtor filed a class proof of claim on behalf of all purchasers of burial rights in its Cemeteries. ........................................................... 7
    E.     The Committee moved for partial summary judgment on the First Amendment and RFRA claims and defenses......................................... 8
    F.     The Bankruptcy Court ruled in favor of the Committee on the First Amendment and RFRA Free Exercise claims and defenses................................ 9
    G.     The District Court asserted jurisdiction and reversed the Bankruptcy Court. .............................................................................................. 10
    H.     The Committee discovered Judge Randa's connections to the Cemeteries, the Cemetery Trust Litigation and the Cemetery Trust. ...................................... 11
STANDARD OF REVIEW ........................................................................................ 12
ARGUMENT .......................................................................................................... 13
    A.     This Court should issue a writ of mandamus directing Judge Randa to recuse himself under 28 U.S.C. § 455(b)(4). ...................................... 13
    B.     This Court should issue a writ of mandamus directing Judge Randa to recuse himself under 28 U.S.C. § 455(a). ......................................... 24
    C.     The Motion to Recuse is not moot. ................................................ 27
CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

*American Textile Mfrs. Inst., Inc. v. Limited, Inc.*,
  190 F.3d 729 (6th Cir. 1999) ................................................................ 15, 30
*Boerne v. Flores*,
  521 U.S. 507 (1997)....................................................................................... 10
*Butner v. United States*,
  440 U.S. 48 (1979).......................................................................................... 10
*Chase Manhattan Bank v. Affiliated FM Ins. Co.*,
  343 F.3d 120 (2d Cir. 2003).......................................................................... 27
*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*,
  525 F.3d 554 (7th Cir. 2008) .................................................................. 18, 19
*Home Placement Serv., Inc. v. Providence Journal Co.*,
  739 F.2d 671 (1st Cir. 1984).......................................................................... 27
*Hook v. McDade*,
  89 F.3d 350 (7th Cir. 1996) ........................................................................... 13
*In re Aetna UCR Litigation*,
  2013 WL 1622160 (D.N.J. 2013) .................................................................. 22
*In re American Reserve*,
  840 F.2d 487 (7th Cir. 1988) ......................................................................... 20
*In re Apollo*,
  2013 WL 4083236 (3d Cir. Aug. 14, 2013)................................................... 27
*In re Archdiocese of Milwaukee*,
  2013 WL 5491895 (E.D. Wis. Oct. 1, 2013) ................................................. 13
*In re Archdiocese of Milwaukee*,
  485 B.R. 385 (Bankr. E.D. Wis. 2013)........................................................... 10
*In re Archdiocese of Milwaukee*,
  496 B.R. 905 (E.D. Wis. 2013)....................................................................... 11
*In re Marshall*,
  721 F.3d 1032 (9th Cir. 2013) ....................................................................... 26
*In re National Union Fire Ins. Co.*,
  839 F.2d 1226 (7th Cir. 1988) ....................................................................... 29
*In re New Mexico Natural Gas Antitrust Litigation*,
  620 F.2d 794 (10th Cir. 1980) .................................................................. 19, 22
*In re Sherwin-Williams Co.*,
  607 F.3d 474 (7th Cir. 2010) ......................................................................... 27
*In re Virginia Elec. & Power Co.*,
  539 F.2d 357 (4th Cir. 1976) .................................................................... 22, 23
*John Doe 1 v. Archdiocese of Milwaukee*,
  303 Wis. 2d 34, 734 N.W.2d 827 (Wis. 2007) ................................................ 6
*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)........................... 14, 26
*Liteky v. U.S.*,
  510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).............................. 27
*Matter of Mason*,
  916 F.2d 384  (7th Cir. 1990) ........................................................................ 27

*Perry v. Schwarzenegger*,
   790 F. Supp. 2d 1119 (N.D. Cal. 2011) ............................................ 29
*Porter v. Singletary*,
   49 F.3d 1483 (11th Cir. 1995) ...................................................... 15
*SCA Servs, Inc. v. Morgan*,
   557 F.2d 110 (7th Cir. 1977) .................................................. 1, 24
*Taylor v. O'Grady*,
   888 F.2d 1189 (7th Cir. 1989) ................................................ 13, 15
*Tramonte v. Chrysler Corp.*,
   136 F.3d 1025 (5th Cir. 1998) ................................................ 21, 22
*U.S. v. Barnes*,
   909 F.2d 1059 (7th Cir. 1990) ...................................................... 30
*U.S. v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ...................................................... 30
*U.S. v. Tucker*,
   78 F.3d 1313 (8th Cir. 1996) ...................................................... 30
*United States v. Balistrieri*,
   779 F.2d 1191 (7th Cir.1985) ........................................................ 1

## STATUTES

11 U.S.C. § 101(4) ............................................................................ 18
11 U.S.C. § 501(c) ............................................................................ 18
11 U.S.C. § 502(a) ............................................................................ 18
11 U.S.C. § 541 .................................................................................. 6
28 U.S.C. § 157(c)(1) .................................................................... 9, 10
28 U.S.C. § 157(d) ........................................................................... 28
28 U.S.C. § 455 ............................................................................ 1, 26
28 U.S.C. § 455(a) ..................................................................... passim
28 U.S.C. § 455(b) ........................................................................... 24
28 U.S.C. § 455(b)(4) ............................................................... passim
28 U.S.C. § 455(c) ........................................................................... 13
28 U.S.C. § 455(d)(4) ....................................................................... 13
28 U.S.C. § 1651 ................................................................................ 1
42 U.S.C. §§ 2000bb-1(b) .................................................................. 3
Wis. Stat. § 157.115(b) .................................................................... 23

## OTHER AUTHORITIES

Code of Conduct for United States Judges .......................... 13, 14, 24
First Amendment to the United States Constitution ....................... passim
Religious Freedom Restoration Act ............................................. passim

## RULES

Fed. R. App. P. 21 .............................................................................. 1
Fed. R. Bankr. P. 3001(g) ............................................................... 18
Fed. R. Bankr. P. 9019 .................................................................... 28
Fed. R. Civ. P. 60(b)(6) ................................................................... 12

# EXHIBIT LIST

True and correct copies of the documents listed below are attached as exhibits to the Appendix to

Petition for Writ of Mandamus submitted concurrently herewith.

| Exhibit | Name of Document | Docket Number | Case Number |
|---------|-----------------|---------------|-------------|
| A | Amended Complaint | 34 | Adv. P. No. 11-02459-SVK |
| B | Trust Agreement Creating the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (Exhibit A to the Declaration of Kenneth Brown in Support of the Committee's Motion for Summary Judgment on Count III of Amended Complaint) | 57-2 | Adv. P. No. 11-02459-SVK |
| C | June 4, 2007 letter from Archbishop Dolan to Claudio Cardinal Hummes[ADOM112303-112304] | N/A | N/A |
| D | Answer and Affirmative Defenses to First Amended Counterclaims | 56 | Adv. P. No. 11-02459-SVK |
| E | First Amended Answer to Amended Complaint and Affirmative Defenses; and First Amended Counterclaims | 50 | Adv. P. No. 11-02459-SVK |
| F | Schedule F (Creditors Holding Unsecured Nonpriority Claims) | 111 | Bankr. Ct. No 11-20059-SVK |
| G | Complaint | 1 | Adv. P. No. 11-02459-SVK |
| H | Second Stipulation Regarding the Official Committee of Unsecured Creditors' Standing to Defend the Adversary Proceeding, Bring Avoidance Actions Related to the Amended Complaint and Litigate and Propose or Accept a Settlement of the Adversary Proceeding; Order thereon | 37 39 | Adv. P. No. 11-02459-SVK |
| I | Cemetery Care Claim | Claim 179 | Bankr. Ct. No 11-20059-SVK |
| J | Official Committee of Unsecured Creditors Motion for Summary Judgment on Count III of Amended Complaint, Memorandum of Law; Affidavit of Kenneth Brown | 57 | Adv. P. No. 11-02459-SVK |
| K | Trustee's Response to Official Committee of Unsecured Creditors Motion for Summary Judgment on Count III of Amended Complaint; Trustee's Statement of Proposed Material Facts; Declaration of Archbishop Jerome Listecki | 69 | Adv. P. No. 11-02459-SVK |
| L | Transcript of Status Conference on October 18, 2012 | 1047 | Bankr. Ct. No 11-20059-SVK |

DOCS_LA:272270.6

| M | Appearances and Summary of Disposition | 1012 | Bankr. Ct. No 11-20059-SVK |
|---|---|---|---|
| N | Reply of the Official Committee of Unsecured Creditors to Trustee's Opposition to Motion for Partial Summary Judgment on Count III of Amended Complaint | 75 | Adv. P. No. 11-02459-SVK |
| O | Stipulation to Amend Pleadings and to Consent to Issuance of Final Orders by Bankruptcy Court on Certain Claims and Defenses; Order thereon | 61 64 | Adv. P. No. 11-02459-SVK |
| P | Decision on Motion for Summary Judgment | 79 | Adv. P. No. 11-02459-SVK |
| Q | Order Granting Motion for Summary Judgment | 80 | Adv. P. No. 11-02459-SVK |
| R | Decision and Order | 24 | Dist. Doc. No 13-CV-179 |
| S | Appellant's Initial Brief | 16 | Dist. Doc. No 13-CV-179 |
| T | Brief of Appellee Official Committee of Unsecured Creditors | 19 | Dist. Doc. No 13-CV-179 |
| U | Judgment in a Civil Case | 26 | Dist. Doc. No 13-CV-179 |
| V | Notice of Appeal | 36 | Dist. Doc. No 13-CV-179 |
| W | Amended Emergency Motion for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents; Affidavit of James I. Stang | 2183 2187 | Bankr. Ct. No 11-20059-SVK |
| X | Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings | 30 | Dist. Doc. No 13-CV-179 |
| Y | Memorandum in Support of Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings | 31 | Dist. Doc. No 13-CV-179 |
| Z | Affidavit of James I. Stang in Support of Official Committee of Unsecured Creditors' Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings | 32 | Dist. Doc. No 13-CV-179 |
| AA | Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | 27 | Dist. Doc. No 13-CV-179 |

| BB | Memorandum in Support of Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | 28 | Dist. Doc. No 13-CV-179 |
|----|----|----|----|
| CC | Affidavit of James I Stang in Support of Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(b) and 28 U.S.C. § 455 | 29 | Dist. Doc. No 13-CV-179 |
| DD | Decision and Order | 46 | Dist. Doc. No 13-CV-179 |

DOCS_LA:272270.6

## RELIEF REQUESTED

The Official Committee of Unsecured Creditors (the "Committee") asks this Court to issue a writ of mandamus directing the Honorable Rudolph T. Randa, United States District Judge for the Eastern District of Wisconsin, to recuse himself from presiding over the adversary proceeding known as *Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust v. Official Committee of Unsecured Creditors* (Adv. P. No. 11-02459-SVK and Dist. Ct. No. 13-CV-179) (the "Cemetery Trust Litigation") as well as any other proceedings that arise in the chapter 11 bankruptcy case of the Archdiocese of Milwaukee (the "Debtor") (Bankr. No. 11-20059-SVK) related to the Debtor's cemeteries (including but not limited to any objection to Proof of Claim 179 (the "Cemetery Care Claim") and any attempt to settle or otherwise compromise the Cemetery Trust Litigation through a plan of reorganization or otherwise (the "Cemetery Related Proceedings")). The relief requested is predicated upon 28 U.S.C. §§ 455(b)(4) and 455(a) and the Code of Conduct for United States Judges.

## JURISDICTION

This Court has jurisdiction over this petition pursuant to Federal Rule of Appellate Procedure 21 and 28 U.S.C. § 1651. A petition for a writ of mandamus is an extraordinary remedy, but it is the only recourse available to challenge a judge's denial of a motion to recuse under 28 U.S.C. § 455. *United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986); *SCA Servs, Inc. v. Morgan*, 557 F.2d 110, 117-18 (7th Cir. 1977).

## ISSUES PRESENTED

Whether Judge Randa was required to recuse himself under 28 U.S.C. § 455(b)(4) from presiding over the Cemetery Trust Litigation and any Cemetery Related Proceedings where he has a direct financial interest in the proceedings?

Whether Judge Randa should have recused himself because of the appearance of impropriety and bias pursuant to 28 U.S.C. § 455(a)?

## BRIEF ANSWER

As is set forth below, Judge Randa should have recused himself under both 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(a).

## SUMMARY OF ARGUMENT

In 2007, when it was facing tens of millions of dollars in sexual abuse claims, the Archdiocese of Milwaukee (the "Debtor") created a trust, the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust (the "Cemetery Trust"), into which the Debtor subsequently transferred over $55 million (the "Transferred Funds"). The Debtor moved these funds into the Cemetery Trust specifically to shield them from the claims of creditors, and particularly child sex abuse victims. The trust was created on behalf of the Debtor by the Archbishop of the Archdiocese of Milwaukee (the "Archbishop"), who was and is its sole trustee.[1]

After seeking relief under chapter 11 of the United States Bankruptcy Code in January of 2011, the Cemetery Trust filed a lawsuit against the Committee, in which it seeks to prevent the Transferred Funds from being applied toward settlements with clergy sex abuse cases through a declaration that the Transferred Funds are not property of the Debtor's bankruptcy estate. The

---

[1] Timothy M. Dolan was the Archbishop at the time the Cemetery Trust was created. Jerome E. Listecki is the current Archbishop.

Committee, which was authorized to defend the action and raise affirmative defenses and

counterclaims on behalf of the Debtor's estate, countersued to avoid the transfer as both actually

and constructively fraudulent under Wisconsin law and the Bankruptcy Code.[2]

At the heart of the Cemetery Trust Litigation is the question of whether the Committee,

acting on behalf of the estate, will be able to recover the Transferred Funds. The Archbishop and

the Debtor argue that the Transferred Funds were and are designated for the "perpetual care" of

eight cemeteries owned by the Debtor, that part of the purchase price of each burial site sold by

the Debtor was designated for perpetual care, and that the Debtor held those funds in trust prior

to their transfer into the Cemetery Trust in 2008. The Archbishop also claims that the Debtor will

be unable to fulfill its moral, contractual and religious obligations to provide perpetual care if

any of the Transferred Funds are used to pay creditors. Finally, the Archbishop alleges that

avoiding the $55 million transfer pursuant to Wisconsin or federal fraudulent transfer laws or

applying any provision of the Bankruptcy Code by which some or all of the funds in the

Cemetery Trust could be determined to be property of the Debtor's estate would violate its free

exercise of religion under a federal statute, the Religious Freedom Restoration Act ("RFRA"), 42

U.S.C. §§ 2000bb-1(b), and the First Amendment to the United States Constitution.

The Honorable Rudolph T. Randa has or will be presiding over many aspects of the

Cemetery Trust Litigation as both the initial appellate court and, in some instances, the trial

court. Permitting Judge Randa to preside over the Cemetery Trust Litigation or any Cemetery

Related Proceeding violates both 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(a) and deprives the

Committee of fairness and due process. Judge Randa's parents and seven other close relatives

(including his two sisters, an aunt, an uncle, his wife's parents and his brother-in-law) are buried

---

[2] The Committee was authorized to act on behalf of the estate because the Debtor has a conflict of interest, namely that the Archbishop is both the president and sole member of the Debtor and the trustee of the Cemetery Trust.

in cemeteries owned by the Debtor. Judge Randa is the purchaser of his parents' burial rights pursuant to a contract with the Debtor under which the Debtor has on ongoing contractual obligation to Judge Randa to care for and maintain their crypts. The Cemetery Trust is the sole source of funding for the Debtor's perpetual care obligations (including those to Judge Randa and his relatives), which the Debtor contends that it will be unable to fulfill if the $55 million transfer to the Cemetery Trust is avoided.

Furthermore, the Debtor also claims that it placed a portion of the proceeds of the sale of **every** mausoleum, crypt and gravesite in trust to provide for perpetual care. Accordingly, the Debtor allegedly set aside some portion of the consideration paid by Judge Randa for his parents' crypts (the "Randa Trust Funds"), held those funds in trust, and then transferred those funds to the Cemetery Trust as a part of the transfer that the Committee is seeking to avoid. Whether the funds collected from purchasers including Judge Randa were legally in trust or whether, instead, those funds were commingled with the Debtor's general funds and therefore never obtained the character of trust funds will be determined by the judge presiding over the Cemetery Trust Litigation.

Judge Randa's significant, direct interests in the Cemetery Trust and the Cemetery Trust Litigation require recusal under both 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(a). The Cemetery Trust is allegedly holding the Randa Trust Funds, which gives Judge Randa a financial interest in a party in violation of 28 U.S.C. § 455(b)(4). Judge Randa also has a financial interest in the subject matter in controversy because the Archbishop claims that the Debtor will breach its contractual obligation to Judge Randa to maintain his parents' crypts if the Cemetery Trust has to turnover its assets to the Debtor's estate. Finally, Judge Randa also has an "other interest" that will be substantially affected by the outcome of the Cemetery Trust Litigation—his interest in

seeing that his parents' crypts (and those of his other close family relatives) and the surrounding

cemeteries are maintained. All of these factors, as well as the strong emotional and moral angst

that any child of a parent buried in the Cemeteries would experience if the Debtor were unable to

maintain his parents' crypts and the surrounding cemetery, also create an appearance of partiality

in violation 28 U.S.C. § 455(a). Accordingly, Judge Randa must be recused.

## FACTS

**A.     The Debtor transferred over $55 million to the Cemetery Trust.**

The Debtor owns an unencumbered fee simple interest in and operates eight cemeteries

and mausoleums (collectively the "Cemeteries"), including the two cemeteries in which Judge

Randa's parents and his other relatives are buried. [Adv. Doc. No. 34, at ¶ 14 (Exhibit A to

Appendix)].[3] On July 11, 2007, the Wisconsin Supreme Court decided *John Doe 1 v.*

*Archdiocese of Milwaukee*, 303 Wis. 2d 34, 75-76, 734 N.W.2d 827, 846-847 (Wis. 2007),

which made it possible for some victims of clergy abuse to sue for damages. Before that

decision, such cases were blocked by prior case law. On April 2, 2007 (while *John Doe 1 v.*

*Archdiocese* was pending before the Wisconsin Supreme Court), the Debtor, as trustor, and

Timothy M. Dolan, the former Archbishop of Milwaukee, in his official capacity as Archbishop,

as trustee, executed the Trust Agreement Creating the Archdiocese of Milwaukee Catholic

Cemetery Perpetual Care Trust. [Adv. Doc. No. 57-2, at Exhibit A (Exhibit B to Appendix)]. On

June 4, 2007, Archbishop Dolan wrote a letter to the Vatican requesting permission to transfer

$56,943,983.35 of the Debtor's money to the Cemetery Trust. The letter states in pertinent part:

---

[3] Copies of each of the documents cited herein are attached as exhibits to the Appendix to Petition for
Writ of Mandamus (the "Appendix") filed by the Committee. References to documents filed in the main
bankruptcy case (11-20059-SVK) are described as "Bankr. Doc. No. ___". References to documents filed
in the bankruptcy court adversary proceeding as a part of the Cemetery Trust Litigation (11-02459-SVK)
are described as "Adv. Doc. No. ___". References to documents filed in the District Court as a part of the
Cemetery Trust Litigation (13-CV-179) are described as "Dist. Doc. No. ___".

> By transferring these assets to the Trust, I foresee an improved protection
> for these funds from any legal claim and liability.  A careful analysis by
> experts has concluded that the funds currently held for perpetual care
> needs are sufficient for the long-term use by the Catholic cemeteries. The
> value of the fund to be transferred was $56,943,983.35 as of December 31,
> 2006.

[ADOM 112303-112304 (emphasis added) (Exhibit C to Appendix)]. The request was granted,

and in March 2008, the Debtor transferred over $55 million into a Cemetery Trust account at

U.S. Bank. [Adv. Doc. No. 56, at ¶ 43 (Exhibit D to Appendix)]. Prior to their transfer to the

Cemetery Trust, the Transferred Funds were classified as "unrestricted" in the Debtor's financial

statements. [Adv. P. No. 50, at 33-35 (Exhibit E to Appendix)].

**B.      The Debtor filed for bankruptcy.**

On January 4, 2011, with approximately a dozen sex abuse cases pending, the Debtor

filed a petition under chapter 11 of the United States Bankruptcy Code. [Bankr. Doc. 111

(Exhibit F to Appendix)]. The Debtor's bankruptcy case was assigned to the Honorable Susan V.

Kelley, United States Bankruptcy Judge (Case No. 11-20059-SVK). On or about January 24,

2011, the Committee was appointed pursuant to 11 U.S.C. § 1102 (a)(1).

**C.      The Archbishop, as trustee of the Cemetery Trust, sued the Committee.**

On June 28, 2011, the Cemetery Trust filed a complaint against the Committee in which

it sought a declaration that neither the Cemetery Trust nor the Transferred Funds were property

of the Debtor's bankruptcy estate under 11 U.S.C. § 541.  [Adv. Doc. No. 1 (Exhibit G to

Appendix)]. The Cemetery Trust later amended its Complaint to substitute Archbishop Jerome E.

Listecki, as trustee of the Cemetery Trust, as the plaintiff. [Adv. Doc. No. 34 (Exhibit A to

Appendix)]. Pursuant to Counts I, II, IV and V of his Amended Complaint, the Archbishop

sought a declaration that neither the Cemetery Trust nor its assets are property of the estate

pursuant to Bankruptcy Code section 541. Arguing that the Committee is a government actor, the

6

Archbishop further alleged that avoiding the $55 million transfer pursuant to Wisconsin or federal fraudulent transfer laws or applying any provision of the Bankruptcy Code by which some or all of the funds in the Cemetery Trust could be determined to be property of the Debtor's estate would violate the Cemetery Trust's statutory rights to the free exercise of religion under RFRA and the First Amendment.

By stipulation and order of the Bankruptcy Court, the Committee defended the lawsuit on behalf of the estate and filed counterclaims. [Adv. Doc. Nos. 37, 39 (Exhibit H to Appendix)]. The Committee contends, among other things, that the transfer of the Transferred Funds to the Cemetery Trust is both actually and constructively fraudulent under the Bankruptcy Code and Wisconsin law, that the Cemetery Trust is a voidable self-settled trust in which the Debtor is a beneficiary and that the funds transferred into the Cemetery Trust are property of the Debtor's estate, and are, therefore, available (in whole or in part) to satisfy the claims of the Debtor's creditors. [Adv. Doc. No. 50 (Exhibit E to Appendix)]. The Committee also asserted numerous affirmative defenses that it contended defeated the Cemetery Trust's First Amendment and RFRA claims, including: (i) federal bankruptcy laws are neutral, generally applicable laws, which are valid under the Religion Clauses of the First Amendment; (ii) the application of RFRA to state law is unconstitutional, and (iii) the Committee is a private entity, and the First Amendment and RFRA are not applicable when the government is not a party to the suit.

**D.     The Debtor filed a class proof of claim on behalf of all purchasers of burial rights in its Cemeteries.**

On November 16, 2011, the Debtor filed an unliquidated, uncertified class proof of claim (the "Cemetery Care Claim") "on behalf of purchasers of graves, crypts, mausoleum space, income care, endowment care, perpetual care and the estates, legal representatives, heirs, successors, assigns and beneficiaries of decedents buried, interred or otherwise preserved in the

DOCS_LA:272270.6

cemeteries of the Archdiocese of Milwaukee (the "Cemetery Care Claimants"). [Claim 179
(Exhibit I to Appendix)]. By filing the Cemetery Care Claim, the Debtor has represented that the
Cemetery Care Claimants (which include Judge Randa) have a "claim" against the Debtor
related to the Debtor's obligation to care for the Cemeteries.

**E.     The Committee moved for partial summary judgment on the First Amendment and
RFRA claims and defenses.**

In May of 2012, the Committee filed a motion seeking partial summary judgment against
the Cemetery Trust on the solely legal issues involving the Cemetery Trust's statutory and
constitutional free exercise claims and defenses (the "MPSJ") [Adv. Doc. No. 57 (Exhibit J to
Appendix)]. On July 9, 2012, the Archbishop filed his response to the Committee's MPSJ (the
"Response") as well as the Declaration of Archbishop Listecki (the "Listecki Declaration").
[Adv. Doc. No. 69 (Exhibit K to Appendix)]. The Committee's MPSJ raised purely legal
questions and did not seek summary judgment on the factual issue of whether permitting the
Committee to recover the $55 million fraudulently transferred would impose a substantial burden
on the Cemetery Trust's free exercise of religion. In his Response, however, the Archbishop
briefed the substantial burden issue, submitted the Listecki Declaration in support and asked the
Bankruptcy Court to enter summary judgment in its favor on the entire case on the theory that it
had borne its burden of proof on "substantial burden" and, therefore, the court could reach the
merits of the RFRA and the First Amendment claims (the "Cross-MSJ").

The substantial burden issue was then withdrawn because the parties and the Bankruptcy
Court agreed it is a fact issue. Specifically, prior to the deadline for the Committee to file its
reply to the Response and any factual or legal opposition to the Listecki Declaration, the parties
agreed that the Cross-MSJ would not go forward and would instead be briefed only after the
Bankruptcy Court determined the purely legal issues regarding RFRA and the First Amendment

raised in the Committee's MPSJ. [Bank. Doc. No. 1047, at 15-23 (Exhibit L to Appendix)]. This

agreement was then memorialized in the Bankruptcy Court's Minute Order. [Bankr. Doc. No

1012, at 3 (Exhibit M to Appendix)]. Accordingly, the Committee's Reply did not address the

substantial burden issues or the factual matters raised in the Listecki Declaration. The Committee

filed its reply on November 21, 2012 (the "Reply"). [Adv. Doc. No. 75 (Exhibit N to

Appendix)].

The parties acknowledged that the fraudulent transfer claims were core proceedings, but

that the First Amendment and RFRA claims and defenses were noncore and the Bankruptcy

Court could hear them, but could not enter a final judgment on them. Instead, the Bankruptcy

Court was to submit proposed findings of fact and conclusions of law to the district court for de

novo review in accordance with the provisions of 28 U.S.C. §157(c)(1). [Adv. Doc. Nos. 61, 64

(Exhibit O to Appendix)].

**F.    The Bankruptcy Court ruled in favor of the Committee on the First Amendment
       and RFRA Free Exercise claims and defenses.**

On January 17, 2013, the Bankruptcy Court granted the Committee's MPSJ on all

theories [Adv. Doc. No. 79, 80 (Exhibits P, Q to Appendix)]; *In re Archdiocese of Milwaukee*,

485 B.R. 385 (Bankr. E.D. Wis. 2013). Specifically, the Bankruptcy Court held: (1) The

committee of private creditors is not a "government" and is not acting under color of law as that

term is used in RFRA or the First Amendment. Therefore, RFRA is not a defense to the

Committee's claims or defenses in the Cemetery Trust Litigation, including its argument that the

Cemetery Trust funds are available for the estate because their transfer was a fraudulent

conveyance; (2) RFRA does not apply because the ultimate law to be applied to determine if the

Cemetery Trust's assets are to be included in the Debtor's estate is state law (*Butner v. United

States*, 440 U.S. 48, 55 (1979)) and RFRA may not be used to invalidate or narrow state law

under *Boerne v. Flores*, 521 U.S. 507 (1997) (holding application of RFRA to state law violates the Constitution's inherent limits of federalism), and (3) the Bankruptcy Code is a neutral and generally applicable statute that does not target religion or religious conduct for negative treatment, and therefore the First Amendment is no defense to any of the Committee's theories of recovery including that the transfer of the funds into the Cemetery Trust was a fraudulent conveyance. The Bankruptcy Court should have submitted proposed findings of fact and conclusions of law to the District Court, and the District Court should have entered a final judgment on the Committee's PMSJ. *See* 28 U.S.C. § 157(c)(1). Instead, however, the Bankruptcy Court entered its own order.

**G.     The District Court asserted jurisdiction and reversed the Bankruptcy Court.**

On July 29, 2013, the District Court issued its Decision and Order reversing the Bankruptcy Court (the "Order Granting Summary Judgment") [Dist. Doc. No. 24 (Exhibit R to Appendix)]; *In re Archdiocese of Milwaukee*, 496 B.R. 905 (E.D. Wis. 2013).[4] In its Order Granting Summary Judgment, the District Court concluded that the First Amendment and RFRA were complete defenses to the Committee's theories of recovery (including its argument that the Transferred Funds were fraudulently transferred into the Cemetery Trust), and therefore, the Cemetery Trust and its assets are absolutely immune from inclusion in the Debtor's bankruptcy estate. Notably, the District Court reached out to decide the substantial burden issue (*which the parties had agreed to set aside*) based solely on the Archbishop's statement in affidavit that had never been subject to cross-examination or discovery on the issue below, and in spite of the fact that the issue was not before the Bankruptcy Court.

---

[4] *See also* Appellant's Initial Brief [Dist. Doc. No. 16 (Exhibit S to Appendix)]; Brief of Appellee Official Committee of Unsecured Creditors [Dist. Doc. No. 19 (Exhibit T to Appendix)].

DOCS_LA:272270.6

On August 1, 2013, the District Court entered judgment: (a) denying partial summary judgment to the Committee, (b) granting summary judgment to the Cemetery Trust, and (c) dismissing the Cemetery Trust Litigation in its entirety (the "Judgment of Dismissal").  [Dist. Doc. No. 26 (Exhibit U to Appendix)]. Specifically, the District Court held, "It is ordered and adjudged that the Official Committee of Unsecured Creditors cannot use the Bankruptcy Code to make the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust property of the bankruptcy estate because doing so would violate [RFRA] and the First Amendment to the United States Constitution." On August 26, 2013, the Committee appealed from the Order Granting Summary Judgment and the Judgment of Dismissal. [Dist. Doc. No. 36 (Exhibit V to Appendix)]. The appeal is pending before the Court of Appeals for the Seventh Circuit as *Official Committee of Unsecured Creditors v. Listecki* (13-2881).

## H.     The Committee discovered Judge Randa's connections to the Cemeteries, the Cemetery Trust Litigation and the Cemetery Trust.

In the Order Granting Summary Judgment, Judge Randa reversed every aspect of the Bankruptcy Court's reasoned opinion and reached out to decide issues that were not before the Bankruptcy Court without permitting discovery on critical factual issues. Shortly after its entry, counsel for the Committee discovered that Judge Randa's parents, two sisters, a brother–in-law, an uncle and an aunt and parents-in-law are interred in cemeteries that are owned by the Debtor and which are to be maintained with the funds moved from the Debtor's accounts to the Cemetery Trust before filing for bankruptcy.[5] Pursuant to the Committee's Amended Emergency Motion for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents [Bankr. Doc. Nos. 2183, 2187 (Exhibit W to Appendix)], on August

---

[5] *See* Affidavit of James I. Stang in Support of Committee's Amended Emergency Motion for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Directing Debtor's Production of Documents (Exhibit W to Appendix).

12, 2013, the Debtor produced an "Agreement" between Judge Randa and the Debtor for the purchase of burial rights for his parents and the care and maintenance of their crypt spaces (the "Randa Cemetery Contract").[6] At no time during the Cemetery Trust Litigation did Judge Randa, the Debtor, the Archbishop or the Cemetery Trust (or any other party) disclose any of the foregoing information to the Committee.

On August 12, 2013, the Committee moved the District Court for an order pursuant to 28 U.S.C. §§ 455 (a) and 455(b)(4) recusing the Honorable Randolph T. Randa from presiding over any aspect of the Cemetery Trust Litigation and any Cemetery Related Proceedings. (the "Motion to Recuse") [Dist. Doc. Nos. 30, 31, 32] (Exhibits X, Y, Z to Appendix). The Committee also filed a separate Motion to Vacate the Judgment and Decision Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and 28 U.S.C. § 455 [Dist. Doc. Nos.27, 28, 29] (Exhibits AA, BB, CC to Appendix)]. On October 1, 2013, Judge Randa denied both motions (the "Recusal Order") [Recusal Order (Exhibit DD to Appendix)]; *In re Archdiocese of Milwaukee*, 2013 WL 5491895 (E.D. Wis. Oct. 1, 2013).

## STANDARD OF REVIEW

The court of appeals reviews a district judge's decision not to recuse himself *de novo*. *Hook v. McDade*, 89 F.3d 350, 353 (7th Cir. 1996), *cert. denied*, 519 U.S. 1071, 117 S.Ct. 718, 136 L.Ed.2d 637 (1997); *Taylor v. O'Grady*, 888 F.2d 1189, 1201 (7th Cir. 1989).

---

[6] The Randa Cemetery Contract provides, in pertinent part, "The [Debtor] shall provide care and maintenance and such care and maintenance shall be performed only by the [Debtor]." [Randa Cemetery Contract, at ¶ 19.] A copy of the Randa Cemetery Contract is attached as Exhibit N to the Affidavit of James I. Stang in Support of Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings (Exhibit Z to Appendix).

## ARGUMENT

**A.**  **This Court should issue a writ of mandamus directing Judge Randa to recuse himself under 28 U.S.C. § 455(b)(4).**

Federal judges have an ethical obligation to perform their duties impartially. *See* Canon 3, Code of Conduct for United States Judges (the "Judicial Code of Conduct") ("A judge should perform the duties of the office fairly, impartially and diligently."); Canon 2(A), Judicial Code of Conduct ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."). To that end, 28 U.S.C. section 455(b)(4) states that a federal judge **shall** disqualify himself when:

> He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455 (b)(4) (2012). Section 455(d)(4) defines "financial interest" as "ownership of a legal or equitable interest, however small…." 28 U.S.C. § 455(d)(4) (2012). Section 455(b)(4) requires disqualification "no matter how insubstantial the financial interest and regardless of whether or not the interest actually creates an appearance of impropriety." *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 n.8, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Recusal under section 455 is self-executing. A party need not file affidavits in support of recusal and the judge is obligated to recuse himself *sua sponte* under the stated circumstances. *Taylor v. O'Grady*, 888 F.2d at 1200. This determination is not discretionary.

Judges have an affirmative duty to investigate and disclose any facts on which the judge's impartiality might reasonably be questioned or that relate to a financial interest that he or his family may have in a case before him. *See* 28 U.S.C. § 455(c) (2012) ("A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to

inform himself about the personal financial interests of his spouse and minor children residing in his household."); Canon 3(C)(2), Code of Judicial Conduct; *Porter v. Singletary,* 49 F.3d 1483, 1489 (11th Cir. 1995) (judges have an ethical duty to disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification). By contrast, litigants have no duty to investigate a judge's potentially disqualifying circumstances. *See American Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999), *cert denied*, 529 U.S. 1054, 120 S.Ct. 1556, 146 L.Ed.2d 461 (2000) ("We believe instead that litigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters.").

>1.     **Judge Randa has a financial interest in a party to the proceeding and therefore must recuse himself pursuant to section 455(b)(4).**

Judge Randa has a financial interest in a party to the proceeding, the Cemetery Trust. The Debtor claims that <u>every</u> time it sells a crypt, it places a portion of the proceeds of the sale in trust for perpetual care, and that in 2008 it transferred these alleged trust funds to the Cemetery Trust. For example, in the Cemetery Care Claim, the Debtor represents:

>To fulfill its perpetual care obligations, the Archdiocese places a portion of ***every*** sale of a mausoleum, crypt and gravesite in trust to assure the perpetual care of these sacred grounds and to maintain their continuous operation. These perpetual care funds are held in the [Cemetery] Trust.

[Cemetery Care Claim, at ¶ 7 (emphasis added) (Exhibit I to Appendix)]. If the Debtor's representations in the Cemetery Care Claim are true, the Debtor set aside a portion of consideration Judge Randa paid to fulfill its obligation to provide care and maintenance for his parents crypts (the "<u>Randa Trust Funds</u>");[7] it held those funds in trust, and then it transferred

---

[7] The Committee does not know how much of Judge Randa's purchase price was placed in trust or the cost to maintain Judge Randa's relatives' crypts. That information is exclusively within the knowledge of the Debtor and the Cemetery Trust.

them to the Cemetery Trust as a part of the transfer in 2008 that is being challenged by the

Committee.  The Debtor and the Cemetery Trust contend, therefore, that buyers of burial rights,

such as Judge Randa, are beneficiaries of the Cemetery Trust for whose very benefit the

Cemetery Trust sued the Committee. In his Response to the Committee's MPSJ, the Archbishop

states, "The [Cemetery] Trust, **on behalf of itself and its beneficiaries**, filed the present

adversary proceeding on June 28, 2011 . . . ." [Response, at 6 (emphasis added) (Exhibit K to

Appendix)]. According to the Cemetery Trust, then, Judge Randa has a beneficial interest in the

Cemetery Trust which is, by definition, an "equitable interest" in a party, prohibited by section

455(b)(4).

     For the record, the Committee does not believe that the Debtor held any of the funds it

received from crypt buyers for perpetual care prior to 2008 in trust.[8] As it is the Debtor's

contention that it set aside these funds prior to 2008 and held them in trust prior to the creation of

the Cemetery Trust and their transfer to it, however, the Archbishop cannot have it both ways.

He can not assert (as president of the Debtor) that the Debtor set aside a portion of the proceeds

of the sale of **_every_** crypt, placed those proceeds into trust for future maintenance and then

transferred those trust funds to the Cemetery Trust, and then in the same breath, argue (as trustee

of the Cemetery Trust) that the Cemetery Trust is not holding funds in trust for Judge Randa.

This glaring contradiction is perhaps why the Archbishop failed to address the argument that the

Cemetery Trust includes the Randa Trust Funds in his opposition to the Committee's Motion to

Recuse. Notably, Judge Randa also failed to address this issue in his Recusal Order. In any event,

---

[8] At trial, the evidence will show that the burial rights agreements do not mention the creation of a trust; the Debtor did not place the perpetual care funds in a trust account; the Debtor comingled the perpetual care funds with its general operating funds; the Debtor did not indicate that the perpetual care funds were held in trust on its financial statements and in fact characterized them as unrestricted, and the Debtor used the perpetual care funds for purposes other than perpetual care of the crypts and Cemeteries when it was short on operating funds.

15

this factual issue will be determined by the judge presiding over any trial in the Cemetery Trust

Litigation.

>   **2.**     **Judge Randa has a financial interest in the subject matter in controversy.**

It is also a fact that Judge Randa has a financial interest in the subject matter in

controversy in violation of section 455(b)(4). First, as noted above, if the Committee prevails the

Cemetery Trust will have to turnover the Randa Trust Funds to the Debtor's estate, where they

may or may not be used to care for his parents' burial crypts. Second, the Debtor contends that it

will be unable to satisfy its care obligations to purchasers of burial rights, like Judge Randa, if

the Cemetery Trust has to turn over its assets to the Debtor. Judge Randa specifically found this

to be true (based on the unopposed Listecki Declaration) in his Order Granting Summary

Judgment:

> If the Trust is legally compelled to cede all or part of the funds to the
> estate, there will be no funds or substantially less funds for that perpetual
> care.  As a result, neither the Debtor nor the Trust and its Trustee will be
> able to fulfill their canonical and moral obligations to provide the
> appropriate care for these sacred sites-consistent with Catholic doctrine
> and canon law—or assure the requisite permanence, reverence and respect
> for those buried there.

[Order Granting Summary Judgment, at 6 (Exhibit R to Appendix)]. If this is true, then Judge

Randa has an interest in seeing that the Cemetery Trust prevails so that there are adequate funds

to cover the Debtor's perpetual care obligations to him.

>   **(i)**     **Judge Randa's reliance on *Guardian Pipeline, L.L.C. v. 950.80 Acres of***
>   ***Land*, 525 F.3d 554 (7th Cir. 2008) is misplaced.**

Citing *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554 (7th Cir. 2008),

Judge Randa concluded that "interest" as defined in section 455(b)(4) is limited to "an

investment or other asset whose value depends on the outcome, or some other concrete financial

effect." [Recusal Order, at 3 (Exhibit DD to Appendix)]. As he concludes that his parents burial

16

crypt "is not an investment or asset, much less an asset whose value depends on the outcome of this litigation," he concludes he did not run afoul of section 455(b)(4). The case does not support his arguments against recusal. In *Guardian Pipeline*, the movant sought to recuse a commissioner from serving on a panel that was deciding whether or not to approve easements to build a natural gas pipeline. The movant claimed that the law firm for whom the commissioner worked had pipeline companies as clients (though not the pipeline companies involved in the litigation) and that the commissioner might be tempted to decide in favor of the pipeline companies in order to enhance his prospect of being hired to work for other pipeline companies in the future. *Id*. at 556. The Seventh Circuit found that the hope of future business from nonparty pipeline companies did not qualify as a financial interest under section 455(b)(4).

This case is inapposite. First, it is unclear from the opinion whether the movant sought to disqualify the commissioner based on his alleged "financial interest in a party to the proceeding," his alleged "financial interest in the subject mater in controversy," or on the basis of an alleged "other interest that could be substantially affected by the outcome of the proceeding." These are three separate grounds for disqualification, and section 455(b)(4) does <u>not</u> require that a financial interest be "substantially affected by the outcome of the proceeding." That requirement applies only to the alternative provision--"any other interest." As the Tenth Circuit has explained, "If the judge has direct ownership, legal or equitable, then disqualification is required regardless of the size of the interest, unless one of the specified exceptions applies." *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794, 796 (10th Cir. 1980).

Second, *Guardian* is factually distinguishable because it is based on inference built upon inference of the judge's interest. In contrast and at best, *Guardian* stands for the proposition that the hope of future business from companies who are not parties to the litigation is not grounds

for disqualification. Judge Randa's interest in the subject matter of the Cemetery Trust Litigation

is not a hope of future business. It is the certain fact (as alleged by the Archbishop) that if the

Committee prevails, the Debtor will not have sufficient funds to care for his parents' crypts and

surrounding cemetery and will breach its contract with Judge Randa. This surely gives Judge

Randa a financial interest in the subject matter of the litigation in violation of section 455(d)(4).

> **(ii)** **The fact that Judge Randa is a member of the class of Cemetery Care Claimants for whose benefit the Debtor filed a proof of claim is evidence of his forbidden interest in the Cemetery Trust Litigation.**

Judge Randa's financial interest in the subject matter of the litigation is further evidenced

by the proof of claim filed by the Debtor on his behalf.[9] By definition, Judge Randa is a member

of the uncertified class of "Cemetery Care Claimants" on whose behalf the Debtor filed the

Cemetery Care Claim. By filing the Cemetery Care Claim, the Debtor has represented that the

Cemetery Care Claimants (including Judge Randa) have a "claim" against the Debtor. A "claim"

is "a right to payment, whether or not such right is . . . contingent . . . ." 11 U.S.C. § 101(4)

(2012). Therefore, the Debtor, on behalf of the class of Cemetery Care Claimants (Judge Randa

included) has asserted, under penalty of perjury, that the Cemetery Care Claimants have a right

to payment from the Debtor.[10] Indeed, the Debtor filed the Cemetery Care Claim specifically so

that it could administer the claims of the Cemetery Care Claimants. The claim provides:

> The Cemetery Care Claimants include deceased persons with no direct
> voice in these bankruptcy proceedings and other claimants that may not
> know or understand the potential effect of the Debtor's chapter 11

---

[9] A debtor may file a proof of claim on behalf of a creditor that does not timely file a proof of claim. 11 U.S.C. § 501(c) (2012); Fed. R. Bankr. P. 3004. Class proofs of claim are permissible in bankruptcy. *See In re American Reserve,* 840 F.2d 487, 493 (7th Cir. 1988).

[10] A proof of claim that is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure is prima facie evidence of the validity and amount of the claim, and it is deemed allowed unless a party in interest objects. Fed. R. Bankr. P. 3001(g); 11 U.S.C. § 502(a) (2012). Accordingly, while the proof of claim remains subject to objection, at present, the Cemetery Care Claimants have an allowed unliquidated claim (i.e., a right to payment) against the Debtor the amount of which will be determined by the outcome of the Cemetery Trust Litigation.

> proceeding. The Cemetery Care Claimants had or have a simple and
> straightforward expectation—that the graves, crypts and mausoleums will
> be maintained forever.  The Debtor believes it is important to administer
> as many claims as possible in connection with the Debtor's chapter 11
> proceeding including the claims of the Cemetery Care Claimants who are
> likely unaware of the potential impact of these chapter 11 proceedings on
> the Archdiocese's cemeteries.  Moreover, to be viable, any plan of
> reorganization must address these perpetual care obligations.

[Cemetery Care Claim, at ¶ 5 (Exhibit I to Appendix)]. The proof of claim also confirms that the

claims of Cemetery Care Claimants will be affected by the outcome of the Cemetery Trust

Litigation:

> In filing this claim, the Debtor acknowledges that the Cemetery Care POC
> may be affected by the existence of funds that are currently held by the
> [Cemetery Trust], which is currently the subject of an adversary
> proceeding in the chapter 11 case known as Adversary Proceeding No. 11-
> 02459.

[Cemetery Care Claim, at ¶ 5  (Exhibit I to Appendix)].

    As Judge Randa is part of the uncertified class on whose behalf the Debtor filed the

Cemetery Care Claim, his disqualification is mandatory under 455(b)(4). In *Tramonte v.*

*Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998), the Court of Appeals for the Fifth Circuit held

that if a judge or an immediate family member is a member of a putative class seeking monetary

relief, section 455(b)(4) requires recusal because of the judge's financial interest in the case.  *Id.*

at 1029. This is true even if the class has not been certified. *Id.* at 1030. Specifically, the court

stated:

> We conclude that where a judge, her spouse, or a minor child residing in
> her household is a member of a putative class, there exists a "financial
> interest" in the case mandating recusal under § 455(b)(4). The statute
> stresses that any financial interest, "however small," requires the recusal
> of a judge. The fact that a class has not yet been certified unquestionably
> diminishes the expected value of the outcome of the litigation to the
> interested judge, as it makes a financial recovery less certain. Yet recovery
> in any matter that has not reached a final judgment is uncertain; otherwise,
> there would be no case or controversy. Because § 455(b)(4) requires
> recusal for even paltry financial interests, the increased uncertainty of

recovery in the precertification stage of a class action affects the size but not the existence of a disqualifying financial interest.

*Id.* at 1030. *Accord In re Aetna UCR Litigation*, 2013 WL 1622160, *3 (D.N.J. 2013).

Judge Randa reasoned that because the proof of claim itself states that it "does not constitute a request for payment on behalf of any ***individual*** or entity," he is not personally seeking monetary relief and is not required to recuse himself. *Tramonte,* however, requires recusal where a judge or his immediate family member **is a member of a putative class that is seeking monetary relief**. Here, Judge Randa (and his deceased relatives who are buried in the Debtor's Cemeteries) are members of the *class* on whose behalf the Debtor filed a formal proof of claim, and that class is seeking monetary relief, the scope of which may be determined by the outcome of the Cemetery Trust Litigation. Judge Randa must, therefore,  be disqualified.

### (iii)    There is nothing remote or speculative about Judge Randa's interest in the Cemetery Trust and the Cemetery Trust Litigation.

Relying on *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir. 1980) and *In re Virginia Elec. & Power Co.*, 539 F.2d 357 (4th Cir. 1976*),* Judge Randa concluded that a possible adverse effect on the Archbishop's ability to maintain his parents' crypts is not a financial interest within the meaning of section 455(b)(4) because it is too remote and speculative.  This defense of his failure to recuse is unavailing because neither case supports his assertions. In *In re New Mexico Natural Gas*, plaintiffs brought an antitrust suit against a number of natural gas companies that alleged price fixing. The judge (who lived in the area serviced by the gas companies) recused himself because he would have benefitted from lower gas rates if the plaintiffs won. The appellate court held that the possible beneficial effect on future utility bills is not a "financial interest" within the meaning of the statute. The court further found that the judge was not required to recuse himself under the "any other interest" provision

where any benefit to him (like lower utility rates) would be received as a member of the general public.  This was essentially the same holding reached by the Forth Circuit in *In re Virginia Elec. & Power Co*., 539 F.2d 357 (4th Cir. 1976), in which the court overturned the lower court's order of recusal where if the plaintiff had won, the judge, along with most of the utility customers in the entire state of Virginia, would be entitled to a refund for overpayments on their utility bills.

Unlike a judge who may benefit as a member of the general public from lower utility bills, Judge Randa is among a discrete group of people who paid for burial sites and entered into a continuing care contract with the Debtor. According to the Archbishop, the Cemetery Trust now holds those funds for the purpose of providing that service, and the Debtor will be unable to provide the contractually promised care if the Committee prevails in the litigation. Whether or not Judge Randa ultimately is requested or required to pay additional funds to provide for a desired level of maintenance of his parent's crypts as a result of the redirection of the Cemetery Trust's assets to creditors, Judge Randa still has a personal, financial interest in the outcome of the litigation.

3.      **Judge Randa has another interest that could be substantially affected by the outcome of the proceeding.**

Finally, section 455(b)(4) also requires disqualification if the judge knows that he has any other interest that could be substantially affected by the outcome of the proceeding. This interest does not have to be financial. In *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 115-16 (7th Cir. 1977), for example, this court found that "any other interest" might include goodwill or professional reputation. Judge Randa has such an interest, namely, his interest in the care and maintenance of his parents' crypts and those of other close relatives', which according to the

Archbishop will be jeopardized if the Committee prevails in the litigation.[11] Judge Randa

dismissed this interest stating:

> [I]f the Trustee's ability to provide perpetual care is diminished, there is
> no guarantee that the Holy Cross Mausoleum in general or my parents'
> crypt in particular, would be impacted in any way, shape or form.
> Moreover the Trustee's moral and canonical obligation to provide
> perpetual care will not disappear if he loses the lawsuit. His duty to
> provide perpetual care continues. In the unlikely event that the Trustee
> completely fails to satisfy this duty, local municipalities can (and in some
> cases must) intervene. . . .Therefore, my interest in the care and
> maintenance of my parents' burial crypt will not be substantially affected
> by the outcome of this lawsuit.

[Recusal Order, at 5-6 (Exhibit DD to Appendix)]. This conclusion is simply in error. The

Debtor has already stated and Judge Randa has already specifically found that if the Cemetery

Trust has to return its assets to the Debtor, the Debtor **will be unable** to provide for the perpetual

care of its Cemeteries. In connection with the Cemetery Trust's opposition to the Committee's

MPSJ, for example, the Archbishop represented:

> If the Court were to order the Trust to turn over all or part of its funds to
> the bankruptcy estate for the benefit of secular creditors, there would be
> no remaining funds (or, at best, insufficient funds) for the Milwaukee
> Catholic Cemeteries' perpetual care.  **As a consequence, the Trust and
> the Archbishop, its trustee, will be not merely "inhibit[ed] or
> constrain[ed]" from exercising their ecclesiastical obligations for these
> sacred sites, they will be unable to do so.**

[Appellant's Initial Brief, at 38 (citations omitted) (Exhibit S to Appendix)]. Judge Randa

affirmed the Archbishop's position in his Order Summary Granting Judgment, which states:

> If the Trust is legally compelled to cede all or part of the funds to the
> estate, there will be no funds or substantially less funds for that perpetual
> care.  **As a result, neither the Debtor nor the Trust and its Trustee will
> be able to fulfill their canonical and moral obligations to provide the
> appropriate care for these sacred sites-consistent with Catholic**

---

[11] In total, thirty individuals with the last name "Randa" and nine individuals with the last name "Matera"
(Judge Randa's wife's maiden name) are interred in the Debtor's Cemeteries. The Committee does not
know whether Judge Randa or his wife are related to each of these individuals.

> **doctrine and canon law—or assure the requisite permanence,
> reverence and respect for those buried there**.

[Order Granting Summary Judgment, at 6 (Exhibit R to Appendix)]. So in connection with the

Committee's MPSJ, Judge Randa found explicitly that if the Committee prevails, the Debtor, the

Cemetery Trust and the Archbishop ***will be unable*** to fulfill their obligations to provide perpetual

care. On the Motion to Remand, however, he found that it is "***unlikely***" that the Archbishop will

be unable to satisfy his duty to provide perpetual care. The circularity of his reasoning further

underscores why Judge Randa should not be deciding issues involving the ultimate upkeep of his

parents' and close family members' final resting places.

Judge Randa also concluded that in the "unlikely event the [Archbishop] completely fails

to satisfy [his perpetual care] duty," the municipalities in which Cemeteries are located will bail

out the Cemeteries and therefore, "my interest in the care and maintenance of my parents burial

crypt will not be substantially affected by the outcome of the lawsuit." [Recusal Order, at 5-6

(Exhibit DD to Appendix)]. This, however, flatly contradicts his finding in the Order Granting

Summary Judgment that the Archbishop's free exercise of religion will be substantially burdened

if the entirety of the Cemetery Trust funds are not used exclusively to maintain the Cemeteries. If

the availability of a municipal bail-out means that the Cemeteries will always be maintained in

the manner contemplated by those who have contracted with the Debtor for maintenance, then

there can be no burden, let alone a substantial burden, imposed by the use of some or even all of

the Cemetery Trust funds to satisfy the Debtor's creditors.[12] Again, the inconsistency of the

reasoning indicates the lack of judicial neutrality in the decision below.

---

[12] Wisconsin law does provides that if a cemetery authority fails to care for a cemetery for 1 year, the
municipality in which the cemetery is located *may* take control of and care for the cemetery and if the
failure of care is for 5 years, the municipality *shall* do so. Wis. Stat. § 157.115(b). Even assuming that the
First Amendment imposed no barrier to the use of taxpayer funds to bailout the Debtor's religious
Cemeteries and that the municipalities had the money to do so, the fact that Judge Randa's parents' burial

**B.** **This Court should issue a writ of mandamus directing Judge Randa to recuse himself under 28 U.S.C. § 455(a).**

Even if this Court were to find that Judge Randa could avoid the mandate of 28 U.S.C. § 455(b), the appearance of partiality and bias is so strong as to require recusal.  To preserve the public's confidence in the judiciary, federal judges are required to recuse themselves, not just in proceedings in which they are *actually* biased, but "in any proceeding in which [their] impartiality *might reasonably be questioned*." 28 U.S.C. § 455(a) (2012) (emphasis added); Canon 3(c)(1), Judicial Code of Conduct ("A judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. . . ."). For the purpose of section 455 (a), it is the appearance of a lack of impartiality that is disqualifying, not actual partiality. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. at 865 ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."); *In re Marshall*, 721 F.3d 1032, 1041 (9th Cir. 2013) ("Proof of actual bias is not required under § 455(a). Instead, bias should 'be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance.' *Liteky v. U.S.*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)."). The test under 28 U.S.C. § 455 (a) is "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry." *Matter of Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990); *In re Sherwin-Williams Co.*, 607 F.3d 474, 477-78 (7th Cir. 2010).

The standard for creating an appearance of partiality is quite low. In *Home Placement Serv., Inc. v. Providence Journal Co.,* 739 F.2d 671 (1st Cir. 1984), *cert. denied*, 496 U.S. 1191,

---

crypt could be untended for as much as five years surely means that his interest might be affected by the litigation. In addition, there is no guarantee that a municipality would maintain the Cemeteries in a fashion that would meet the Archbishop's standard that "the deceased must be treated with respect and charity in the Catholic faith with the hope of resurrection." [Appellant's Initial Brief, at 11 (Exhibit S to Appendix)].

24

105 S.Ct. 964, 83 L.Ed.2d 969 (1985), a district judge was required to recuse himself on the basis of a complimentary article being published about him in a newspaper by the defendant in the action as it gave the appearance of partiality. *Id.* at 676. *See also In re Apollo*, 12-3033, 2013 WL 4083236, *5 (3d Cir. Aug. 14, 2013) (holding that  judge was to disqualify herself even though the court of appeals did not believe judge ruled partially but it could be reasonably perceived that she was biased because she served on the board of an organization that worked with defendant organization). A judge's interest need not be substantial to warrant recusal under § 455(a). *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128 (2d Cir. 2003) (holding that that even though the judge's financial interest in the case was not substantial, it could still give the appearance of partiality, thereby requiring disqualification).

Judge Randa should be recused from presiding over the Cemetery Trust Litigation and any other Cemetery Related Proceedings under 28 U.S.C. § 455(a). In addition to the fact that many of Judge Randa's close relatives are buried in the Cemeteries, a combination of several other factors creates the appearance of partiality. As was noted above, Judge Randa entered into an agreement with the Debtor for his parents' crypts and for the continuing care of those crypts and the surrounding cemetery. The Cemetery Trust is the source of funding for the Debtor's care obligations to Judge Randa, and if the Transferred Funds are restored to the estate, the Archbishop contends that there will be insufficient funds to fulfill those obligations. In this event, the burden of future maintenance may fall to Judge Randa and/or his wife. The Cemetery Trust is also allegedly holding the Randa Trust Funds which will have to be turned over to the Debtor's estate should the Committee prevail. Judge Randa conceded in the Recusal Order that he was aware that his parents and other close relatives  were interred in cemeteries owned by the Debtor and that he purchased his parents' burial crypts. [Recusal Order, at 2 (Exhibit DD to

Appendix)]. Yet, he failed to disclose those affiliations on the record as required by 28 U.S.C. § 455.

There is also a nonmonetary factor that would cause a reasonable person to question Judge Randa's ability to be impartial—that is the irrefutable personal, moral, and emotional attachment one has to the final resting places of one's close family members. In his decision, Judge Randa states "[T]he Committee's motion presumes that I would be personally upset or aggrieved by the remote possibility that a family member's grave site might fall into disrepair, so much so that I would ignore my duty to exercise impartial judgment." Citing *Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1130 (N.D. Cal. 2011), he states that a "well-informed and thoughtful observer would not make this presumption." [Recusal Order, at 8 (Exhibit DD to Appendix)].[13] His reasoning misses the mark. The issue is not whether the prospect of his parents' burial crypt falling into disrepair would actually cause Judge Randa to be biased. The issue is whether that factor, among other others cited above, would cause a reasonable person to question his ability to be impartial. The Committee submits that it would for any reasonable observer, and that Judge Randa's statement that no reasonable person could question his ability to be impartial when he is presiding over litigation that could jeopardize the care that the bodies of his parents and other close family members will receive defies logic and common sense.[14]

---

[13] Judge Randa's reliance on *Perry* is misplaced. In that case, the court rejected the movant's claim that a judge who was in a relationship with a same sex partner would be so interested in marrying that partner that a reasonable person would question his ability to be impartial in a case involving the constitutionality of California's ban on gay marriage. To do so, the court said, would result in disqualifying a judge based on "unsubstantiated suspicion that the judge is personally biased or prejudiced." *Perry*, 790 F. Supp. 2d at 1130-31. Here, the Committee does not seek to disqualify Judge Randa based on unsubstantiated suspicion of bias, but rather because of his direct, concrete interests in the Cemetery Trust and the Cemetery Trust Litigation.

[14] Judge Randa misguidedly cites the ruling of *In re National Union Fire Ins. Co.,* 839 F.2d 1226 (7th Cir. 1988). In that case, the Seventh Circuit found no basis for recusal where the defendant bank had hired the judge's son to represent a debtor in a revolving credit transaction. *Id.* at 1227. The court held that 28 U.S.C. §§ 455 (b)(4) and 455(a) did not apply, as the son did not represent the bank in the case before his

Finally, it bears repeating that the Committee is not seeking to recuse Judge Randa because he is Catholic, but rather because of his direct interest in the Cemetery Trust, in the subject matter of this litigation and the alleged potential adverse consequences that the Cemetery Trust Litigation could have on the Debtor's contractual obligation to care for his parents' crypt.[15]

## C.    The Motion to Recuse is not moot.

The Committee brought its Motion to Recuse after Judge Randa issued his Order Granting Summary Judgment in favor of the Archbishop. It did so, however, within two weeks of discovering that Judge Randa's relatives were buried in the Debtor's Cemeteries and within one day of discovering the Randa Cemetery Contract.[16] While it is true that some of the information about Judge Randa's relatives was publicly available before that time, the Committee did not know about his association with the Cemeteries or the Cemetery Trust, and it assumed Judge Randa's impartiality as it is entitled to do. *See American Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d at 742. Furthermore, the Randa Cemetery Contract was not public.

---

father, and neither the judge nor the son had any interest in the outcome. In this case, in contrast, Judge Randa has a direct financial and emotional interest in the outcome of the case.

[15] Counsel to the Committee has served as counsel to the official committees of unsecured creditors in eight bankruptcy cases concerning archdioceses, dioceses and religious orders, and this is the first motion to recuse ever brought by counsel to the Committee. The Committee is not seeking to recuse Judge Randa on the grounds that he is Catholic, but rather due to his undisclosed interest in the funds held in the Cemetery Trust. There have been a number of judges who have presided over diocesan bankruptcy cases who have disclosed to the parties that they are Catholic. Specifically, the Committee is informed and believes that the bankruptcy judge in this case, the Honorable Susan V. Kelly is Catholic, and the Honorable Louse DeCarl Adler, who presided over the chapter 11 bankruptcy case of the Roman Catholic Bishop of San Diego, is Catholic. At no time, even in the face of adverse rulings, did Committee counsel ever seek to recuse those judges.

[16] Section 455 contains no time limitation on filing a motion to recuse. Numerous courts have held, however, that a motion to disqualify must be brought at the earliest possible moment after obtaining knowledge of the acts demonstrating the bases for such claim. *U.S. v. Barnes*, 909 F.2d 1059, 1071 (7th Cir. 1990) (construing timeliness requirement under another judicial disqualification provision, 28 U.S.C. § 144). Requests for recusal on remand have been granted when raised for the first time on appeal. *See U.S. v. Tucker*, 78 F.3d 1313, 1325 (8th Cir. 1996); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 109 (D.C. Cir. 2001).

Furthermore, while Judge Randa has already ruled on the Committee's MPSJ, his involvement in these cases is ongoing. The Committee has appealed his Order Granting Summary Judgment, and if this Court reverses and remands, presumably it would (and should) be assigned to another district court judge pursuant to Circuit Rule 36. This, however, would not end Judge Randa's involvement in the Cemetery Trust Litigation or Cemetery Related Proceedings. If the Committee's MPSJ were granted by another district judge, there will still be a trial on the underlying trust and fraudulent conveyance issues. At present, Judge Randa is the appellate judge assigned to the Debtor's case, and he would presumably act as the appellate court after the underlying trial of the Cemetery Trust Litigation. As it currently stands, Judge Randa will also preside as the appellate judge over any settlement of the Cemetery Trust Litigation through a plan of reorganization or upon a motion under Bankruptcy Rule 9019 and any objection to the Cemetery Care Claim. Alternatively, the Debtor could, at any time, seek to withdraw the reference on those issues and ask the district court (again presumably Judge Randa) to actually conduct the confirmation and/or settlement hearing.[17]

## CONCLUSION

For the reasons set forth above, the Committee asks this Court to issue a writ of mandamus directing the Honorable Rudolph T. Randa, United States District Judge for the Eastern District of Wisconsin, to recuse himself from presiding over the Cemetery Trust Litigation and any Cemetery Related Proceedings pursuant to 28 U.S.C. sections 455(b)(4) and 455(a).

---

[17] 28 U.S.C. § 157(d) provides, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on the timely motion of any party, for cause shown."

Respectfully submitted,

Dated: October 22, 2013          By    /s/ Marci A. Hamilton, Esq.

                                                  Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone: (215) 353-8984
Email: Hamilton.marci@gmail.com

Special Counsel to the Official Committee
of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP

By    /s/ James Stang

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Erin Gray (CA Bar No. 157658)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:   jstang@pszjlaw.com
          kbrown@pszjlaw.com
          gbrown@pszjlaw.com
          egray@pszjlaw.com

-and-

Albert Solochek (State Bar No. 1011075)
Howard, Solochek & Weber, S.C.
324 E. Wisconsin Ave., Suite 1100
Milwaukee, WI  53202
Telephone:  (414) 272-0760
Facsimile:  (414) 272-7265
E-mail:   asolochek@hswmke.com

Attorneys for the Official Committee of
Unsecured Creditors

29

# United States District Court
## Eastern District of Wisconsin (Milwaukee)
## CIVIL DOCKET FOR CASE #: 2:13-cv-00179-RTR

| | |
|---|---|
| Listecki v. Official Committee of Unsecured Creditors | Date Filed: 02/20/2013 |
| Assigned to: Judge Rudolph T Randa | Date Terminated: 07/29/2013 |
| related Case: 2:13-cv-00485-RTR | Jury Demand: None |
| Case in other court: WIEB, 11-02459 | Nature of Suit: 422 Bankruptcy Appeal (801) |
| 13-02881 | Jurisdiction: Federal Question |
| USCA Official Committee of Unsecured Creditors, 13-02881 | |
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA | |

**Appellant**

| | | |
|---|---|---|
| **Archbishop Jerome E Listecki** | represented by | **Brady C Williamson** |
| *Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust* | | Godfrey & Kahn SC |
| | | 1 E Main St - Ste 500 |
| | | PO Box 2719 |
| | | Madison, WI 53701-2719 |
| | | 608-257-3911 |
| | | Fax: 608-257-0609 |
| | | Email: bwilliam@gklaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jennifer L Vandermeuse** |
| | | Godfrey & Kahn SC |
| | | 1 E Main St - Ste 500 |
| | | PO Box 2719 |
| | | Madison, WI 53701-2719 |
| | | 608-284-2277 |
| | | Fax: 608-257-0609 |
| | | Email: jvandermeuse@gklaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Linda S Schmidt** |
| | | Godfrey & Kahn SC |
| | | 1 E Main St - Ste 500 |
| | | PO Box 2719 |
| | | Madison, WI 53701-2719 |

Fax: 608-257-0609
Email: lschmidt@gklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew M Wuest**
Godfrey & Kahn SC
780 N Water St
Milwaukee, WI 53202-3590
414-273-3500
Fax: 414-273-5198
Email: mwuest@gklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy F Nixon**
Godfrey & Kahn SC
200 S Washington St - Ste 100
Green Bay, WI 54307-3067
920-432-9300
Fax: 920-436-7988
Email: tnixon@gklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William E Duffin**
Godfrey & Kahn SC
780 N Water St
Milwaukee, WI 53202-3590
414-273-3500
Fax: 414-273-5198
Email: wduffin@gklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Debtor**

**Archdiocese of Milwaukee**                    represented by **Bruce G Arnold**
Whyte Hirschboeck Dudek SC
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819
414-273-2100
Fax: 414-223-5000

Email: barnold@whdlaw.com
*ATTORNEY TO BE NOTICED*

**Daryl L Diesing**
Whyte Hirschboeck Dudek SC
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819
414-273-2100
Fax: 414-223-5000
Email: ddiesing@whdlaw.com
*ATTORNEY TO BE NOTICED*

**Francis H LoCoco**
Whyte Hirschboeck Dudek SC
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819
414-273-2100
Fax: 414-223-5000
Email: flococo@whdlaw.com
*ATTORNEY TO BE NOTICED*

**Lindsey M Johnson**
Whyte Hirschboeck Dudek SC
555 E Wells St - Ste 1900
Milwaukee, WI 53202-3819
414-273-2100
Fax: 414-223-5000
Email: ljohnson@whdlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Appellee**

| **Official Committee of Unsecured Creditors** | represented by | **Albert Solochek** |

Howard Solochek & Weber
324 E Wisconsin Ave - Ste 1100
Milwaukee, WI 53202-4309
414-272-0760
Fax: 414-272-7265
Email: alsolochek@hswmke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin E Gray**
Pachulski Stang Ziehl & Jones LLP

10100 Santa Monica Blvd - Ste 1300
Los Angeles, CA 90067
310-277-6910
Fax: 310-201-0760
Email: egray@pszjlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason R Pilmaier**
Howard Solochek & Weber
324 E Wisconsin Ave - Ste 1100
Milwaukee, WI 53202-4309
414-272-0760
Fax: 414-272-7265
Email: jpilmaier@hswmke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth H Brown**
Pachulski Stang Ziehl & Jones
150 California St - 15th Fl
San Francisco, CA 94111-4500
415-263-7000
Fax: 415-263-7010
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marci A Hamilton**
36 Timber Knoll Dr
Washington Crossing, PA 18977
215-353-8984
Fax: 215-493-1094
Email: hamilton.marci@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gillian N Brown**
Pachulski Stang Ziehl & Jones
10100 Santa Monica Blvd - 13th Fl
Los Angeles, CA 90067
310-227-6910
Fax: 310-201-0760
Email: gbrown@pszjlaw.com
*ATTORNEY TO BE NOTICED*

James D Stang
Pachulski Stang Ziehl & Jones
10100 Santa Monica Blvd - 13th Fl
Los Angeles, CA 90067
310-227-6910
Fax: 310-201-0760
Email: jstang@pszjlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/20/2013 | 1 | MOTION for Leave to Appeal (Attachments: # 1 Record on Appeal)(wieb) |
| 02/20/2013 | | NOTICE Regarding assignment of this matter to Judge Rudolph T. Randa. (nts) (Entered: 02/21/2013) |
| 04/01/2013 | 2 | ORDER signed by Judge Rudolph T. Randa on 4/1/2013 GRANTING 1 Motion for Leave to Appeal. (cc: all counsel) (cb) (Entered: 04/02/2013) |
| 04/10/2013 | 3 | NOTICE of Appearance by Daryl L Diesing on behalf of Archdiocese of Milwaukee. Attorney(s) appearing: Daryl L. Diesing (Diesing, Daryl) |
| 04/10/2013 | 4 | NOTICE of Appearance by Lindsey M Johnson on behalf of Archdiocese of Milwaukee. Attorney(s) appearing: Lindsey M. Johnson (Johnson, Lindsey) |
| 04/10/2013 | 5 | NOTICE of Appearance by Bruce G Arnold on behalf of Archdiocese of Milwaukee. Attorney(s) appearing: Bruce G. Arnold (Arnold, Bruce) |
| 04/10/2013 | 6 | NOTICE of Appearance by Francis H LoCoco on behalf of Archdiocese of Milwaukee. Attorney(s) appearing: Francis H. LoCoco (LoCoco, Francis) |
| 04/11/2013 | 7 | VACATED per 11 ORDER; BRIEFING LETTER Electronically Transmitted to Parties. (cc: all counsel, via USPS to Attorney Brown) (blr) Modified on 4/18/2013 (blr). |
| 04/16/2013 | 8 | NOTICE of Appearance by Gillian N Brown on behalf of Official Committee of Unsecured Creditors. Attorney(s) appearing: Gillian N. Brown (Brown, Gillian) |
| 04/16/2013 | 9 | NOTICE of Appearance by James I Stang on behalf of Official Committee of Unsecured Creditors. Attorney(s) appearing: James I. Stang (Stang, James) |
| 04/17/2013 | | NOTICE of Electronic Filing Error re 9 Notice of Appearance filed by Official Committee of Unsecured Creditors, 8 Notice of Appearance filed by Official Committee of Unsecured Creditors; Electronically filed documents should not be scanned whenever possible. These documents do not need to be re-filed. Please refer to the policies and procedures for electronic case filing found at www.wied.uscourts.gov. (blr) |
| 04/17/2013 | 10 | Rule 7(h) Expedited Non-Dispositive MOTION to Clarify , MOTION for Extension of Time *re Briefing Deadlines*, MOTION to Supplement *the Record* by Jerome E Listecki. (Attachments: # 1 Certificate of Service)(Schmidt, Linda) |

| 04/18/2013 | CBE | ORDER signed by Judge Rudolph T. Randa on 4/18/2013 GRANTING [10](#) Motion to clarify. Briefing schedule [7](#) is VACATED; Docketing and briefing to proceed per bankruptcy rules. (cc: all counsel) (cb) |
| 05/08/2013 | [12](#) | ORDER signed by Judge Rudolph T. Randa on 5/8/2013. Docket entries from 13-C-485 to be transferred into 13-C-179, and 13-C-485 to be closed. Briefing schedule established by 5/1/2013 briefing letter remains in effect. (cc: all counsel)(cb) (Entered: 05/09/2013) |
| 05/08/2013 | [13](#) | RECORD ON APPEAL FROM BANKRUPTCY COURT. Bankruptcy Court case number 11-2459. (originally filed 4/30/2013 in 13-C-485) (Attachments: # [1](#) Docs 1-40, # [2](#) Docs 42, 48 57, 61, 62 & 84, # [3](#) Docs 43-46, # [4](#) Docs 48-56, # [5](#) Docs 58-60, # [6](#) Doc 63, # [7](#) Docs 65-83, # [8](#) Docs 85-98, # [9](#) Docs from case 11-20059 19-110, # [10](#) Docs from case 11-20059 111-705, # [11](#) Docs from case 11-20059 806-1012, # [12](#) Docs from case 11-20059 859-902, # [13](#) Docs from case 11-20059 915-1490, # [14](#) Docs from case 11-20059 1047, 2032, # [15](#) Doc from case 11-20059 1504, # [16](#) Docs from case 11-20059 1505-1808)(blr) (Entered: 05/09/2013) |
| 05/08/2013 | [14](#) | BRIEFING LETTER Electronically Transmitted to Parties. (sent via USPS to Atty Marci A. Hamilton & Atty Kenneth H. Brown) (originally filed 5/1/2013 in 13-C-485) (blr) (Entered: 05/09/2013) |
| 05/15/2013 | [15](#) | ATTACHMENTS Supplemental Transmittal of Record on Appeal. Documents for case 11-20059, #706, 712, 732, 797 and 1260 re [13](#) Bankruptcy Appeal. (Attachments: # [1](#) Doc form case 11-20059 1260)(wieb, ) |
| 05/15/2013 | [16](#) | Appellant's BRIEF filed by Archdiocese of Milwaukee. (Attachments: # [1](#) ADDENDUM 1 - Relevant Statutes, # [2](#) ADDENDUM 2 - In re Walnut Equipment Leasing Co., 2000 WL 1456951, # [3](#) ADDENDUM 3 - McCarthy v. Fuller, 2013 WL 1442293, # [4](#) ADDENDUM 4 - Official Committee of Unsecured Creditors Renaissant Lafayette LLC v. Interforum Holdings-Lafayette LLC, 2013 WL1163783, # [5](#) ADDENDUM 5 - Szeklinski v. Neary, 2007 WL 777539, # [6](#) Certificate of Service)(Schmidt, Linda) |
| 05/16/2013 | [17](#) | Supplemental Transmittal of Record on Appeal re [13](#) Bankruptcy Appeal. Transcripts from hearings held on 10/31/2011 and 12/27/2012. (Attachments: # [1](#) Transcript from case 11-20059 doc 2046)(wieb, ) |
| 05/16/2013 | [18](#) | Supplemental Transmittal of Record on Appeal. Documents from case 11-20059, #915 re [13](#) Bankruptcy Appeal. (wieb, ) |
| 05/29/2013 | [19](#) | Appellee's BRIEF filed by Official Committee of Unsecured Creditors. (Stang, James) |
| 05/29/2013 | [20](#) | APPENDIX by Official Committee of Unsecured Creditors *Appendix I (Excerpts of Record) to [19](#) Brief of Appellee Official Committee of Unsecured Creditors.* (Attachments: # [1](#) Appendix Part One, # [2](#) Appendix Part Two, # [3](#) Appendix Part Three)(Stang, James) (Entered: 05/30/2013) |
| 05/30/2013 | [21](#) | APPENDIX by Official Committee of Unsecured Creditors *Appendix II (Authorities) to [19](#) Brief of Appellee Official Committee of Unsecured Creditors.* (Attachments: # |

| | | Part Four, # 5 Appendix Part Five)(Stang, James) |
|---|---|---|
| 05/30/2013 | 22 | CERTIFICATE OF SERVICE by Official Committee of Unsecured Creditors *of 19 Appellee's Brief, 20 Appendix I (Excerpts of Record) and 21 Appendix II (Authorities)* (Stang, James) |
| 06/12/2013 | 23 | Appellant's REPLY BRIEF filed by Archdiocese of Milwaukee. (Attachments: # 1 Addendum 1 - Bayer Healthcare LLC v. Norbrook Labs Ltd., 2010 WL 338089 (unreported), # 2 Addendum 2 - Korte v. Sebelius, 2012 WL 6757353 (unreported), # 3 Certificate of Service)(Schmidt, Linda) |
| 07/29/2013 | 24 | ORDER RE BANKRUPTCY APPEAL signed by Judge Rudolph T. Randa on 7/29/2013. Decision of bankruptcy court REVERSED and matter REMANDED for further proceedings consistent with this opinion. See Order for details. (cc: all counsel) (cb) (Entered: 07/30/2013) |
| 08/01/2013 | 25 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO REMAND from Judge Kelley in Adversary Case No. 11-2459. (wieb) |
| 08/01/2013 | 26 | JUDGMENT signed by Deputy Clerk and approved by Judge Rudolph T. Randa on 8/1/2013 IN FAVOR OF Jerome E. Listecki AGAINST Official Committee of Unsecured Creditors. (cc: all counsel)(cb) |
| 08/12/2013 | 27 | MOTION to Vacate *Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) and 28 U.S.C. § 455* by Official Committee of Unsecured Creditors. (Stang, James) |
| 08/12/2013 | 28 | BRIEF in Support filed by Official Committee of Unsecured Creditors re 27 MOTION to Vacate *Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) and 28 U.S.C. § 455 Memorandum of Points and Authorities in Support of Motion to Vacate Judgment and Decision and Order.* (Stang, James) |
| 08/12/2013 | 29 | AFFIDAVIT of James I. Stang *in Support of 27 Official Committee of Unsecured Creditors' Motion to Vacate Judgment and Decision and Order.* (Stang, James) |
| 08/12/2013 | 30 | MOTION for Recusal *of the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings* by Official Committee of Unsecured Creditors. (Stang, James) |
| 08/12/2013 | 31 | BRIEF in Support filed by Official Committee of Unsecured Creditors re 30 MOTION for Recusal *of the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings Memorandum in Support of Motion to Recuse.* (Stang, James) |
| 08/12/2013 | 32 | AFFIDAVIT of James I. Stang *in Support of 30 Official Committee of Creditors Motion to Recuse the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings.* (Stang, James) |
| 08/12/2013 | 33 | CERTIFICATE OF SERVICE by Official Committee of Unsecured Creditors *re: 27* |

| | | Motion to Vacate, <u>29</u> Memo in Support of Motion to Vacate, <u>29</u> James Stang *Affidavit re: Motion to Vacate,* <u>30</u> *Motion for Recusal,* <u>31</u> *Memo in Support of Motion for Recusal, and* <u>32</u> *James I. Stang Affidavit in Support of Motion for Recusal* (Stang, James) |
|---|---|---|
| 08/13/2013 | | NOTICE of Electronic Filing Error re <u>29</u> Affidavit, <u>32</u> Affidavit; The Exhibits should have been filed as separate attachments to the Affidavit. These documents do not need to be re-filed. Please refer to the policies and procedures for electronic case filing found at www.wied.uscourts.gov. (blr) |
| 08/13/2013 | <u>34</u> | LETTER from Attorney Jennifer L. Vandermeuse *regarding post-judgment filings.* (Vandermeuse, Jennifer) |
| 08/13/2013 | <u>35</u> | DISCLOSURE Statement by Official Committee of Unsecured Creditors. (Stang, James) |
| 08/26/2013 | <u>36</u> | NOTICE OF APPEAL as to <u>24</u> Order Regarding Bankruptcy Appeal, <u>26</u> Judgment by Official Committee of Unsecured Creditors. Filing Fee PAID $455, receipt number 0757-1745134 (cc: all counsel) (Attachments: # <u>1</u> Certificate of Service)(Hamilton, Marci) |
| 08/27/2013 | <u>37</u> | 7th Circuit Information Sheet re: <u>36</u> Notice of Appeal, (jv) |
| 08/27/2013 | <u>38</u> | Attorney Cover Letter re: <u>36</u> Notice of Appeal, (Attachments: # <u>1</u> Docket Sheet)(jv) |
| 08/27/2013 | <u>39</u> | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re <u>36</u> Notice of Appeal, (jv) |
| 08/27/2013 | <u>40</u> | USCA Case Number 13-2881 re: <u>36</u> Notice of Appeal, filed by Official Committee of Unsecured Creditors. (jv) |
| 09/02/2013 | <u>41</u> | BRIEF in Opposition filed by Jerome E Listecki re <u>30</u> MOTION for Recusal *of the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings,* <u>27</u> MOTION to Vacate *Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) and 28 U.S.C. § 455* . (Attachments: # <u>1</u> Addendum 1 - (unreported) Wellness Intl Network, Ltd. v. Sharif, Case No. 12-1349, # <u>2</u> Addendum 2 - (unreported) Mercier v. City of La Crosse, Case No. 02-376, # <u>3</u> Addendum 3 - (unreported) Franco v. Yale University, Case No. 00-1927, # <u>4</u> Addendum 4 - (unreported) Hu v. Am. Bar Assn, Case No. 08-3156, # <u>5</u> Addendum 5 - Burial records of Francis Van Lieshout and Marie, # <u>6</u> Certificate of Service)(Vandermeuse, Jennifer) |
| 09/16/2013 | <u>42</u> | REPLY BRIEF in Support filed by Official Committee of Unsecured Creditors re <u>30</u> MOTION for Recusal *of the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings,* <u>27</u> MOTION to Vacate *Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) and 28 U.S.C. § 455 Reply to Opposition of Archbishop Jerome E. Listecki to Committee's (1) Motion to Vacate Judgment and Decision and Order and (2) Motion to Recuse the Honorable Rudolph T. Randa.* (Hamilton, Marci) |

| | | |
|---|---|---|
| 09/16/2013 | 43 | CERTIFICATE OF SERVICE by Official Committee of Unsecured Creditors re: *42 Reply to Opposition to Motion to Vacate* (Stang, James) |
| 09/17/2013 | 44 | NOTICE by Official Committee of Unsecured Creditors *Notice of Submission of Exhibit A to Reply to Opposition of Archbishop Jerome E. Listecki to Official Committee of Unsecured Creditors (1) MOTION to Vacate Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) AND 28 U.S.C. § 455 and (2) MOTION to Recuse the Honorable Rudolph T. Randa 42* (Hamilton, Marci) |
| 09/17/2013 | 45 | CERTIFICATE OF SERVICE by Official Committee of Unsecured Creditors re *44 Notice of Submission of Exhibit A to Reply* (Stang, James) |
| 10/01/2013 | 46 | ORDER signed by Judge Rudolph T. Randa on 10/1/2013 DENYING 27 MOTION to Vacate *Judgment and Decision and Order Pursuant to Federal Rule of Civil Procedure 60(B) and 28 U.S.C. § 455*; DENYING 30 MOTION for Recusal *of the Honorable Rudolph T. Randa from the Cemetery Trust Litigation and Cemetery Related Proceedings.* (cc: all counsel)(cb) |